# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD J. TRUMP; THE TRUMP ORGANIZATION, INC.; TRUMP ORGANIZATION LLC; THE TRUMP CORPORATION; DJT HOLDINGS LLC; THE DONALD J. TRUMP REVOCABLE TRUST; and TRUMP OLD POST OFFICE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ELIJAH E. CUMMINGS, in his official capacity as Chairman of the House Committee on Oversight and Reform; PETER KENNY, in his official capacity as Chief Investigative Counsel of the House Committee on Oversight and Reform; and MAZARS USA LLP,<br><br>Defendants. | Civil Action No. 1:19-cv-01136-APM |

## APPLICATION FOR A TEMPORARY RESTRAINING ORDER

Per Federal Rule of Civil Procedure 65 and Local Rule 65.1, Plaintiffs ask this Court to enter a TRO prohibiting Defendants from enforcing or complying with the challenged subpoena until this Court resolves Plaintiffs' motion for a preliminary injunction. This application is based on Plaintiffs' accompanying statement of points and authorities, Plaintiffs' declaration and other filings, and any oral argument or evidence presented at a TRO hearing (if there is one). Plaintiffs are entitled to a TRO that freezes the status quo under *U.S. Servicemen's Fund v. Eastland*, 488 F.2d 1252 (D.C. Cir. 1973), and *United States v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010).

Plaintiffs also satisfy the four-factor test for a TRO. They are likely to prevail on their claim that the subpoena has no legitimate legislative purpose. Allowing Defendants to obtain or disclose Plaintiffs' information before Plaintiffs can litigate their preliminary-injunction motion, moreover, would irreparably harm them. Congress has a negligible interest in immediately seeing Plaintiffs'

documents (to investigate matters that are at least five years old), and the public interest lies with

ensuring that Congress stays within its constitutional powers.

Respectfully submitted,

Dated: April 22, 2019

 _s/ William S. Consovoy_

Stefan C. Passantino (D.C. Bar #480037)
MICHAEL BEST & FRIEDRICH LLP
1000 Maine Ave. SW, Ste. 400
Washington, D.C. 20024
(202) 747-9582
spassantino@michaelbest.com

*Counsel for The Trump Organization, Inc., Trump Organization LLC, The Trump Corporation, DJT Holdings LLC, Trump Old Post Office LLC, and The Donald J. Trump Revocable Trust*

William S. Consovoy (D.C. Bar #493423)
Cameron T. Norris
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Blvd., Ste. 700
Arlington, VA 22201
(703) 243-9423
will@consovoymccarthy.com
cam@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com

*Counsel for President Donald J. Trump*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD J. TRUMP; THE TRUMP ORGANIZATION, INC.; TRUMP ORGANIZATION LLC; THE TRUMP CORPORATION; DJT HOLDINGS LLC; THE DONALD J. TRUMP REVOCABLE TRUST; and TRUMP OLD POST OFFICE LLC, <br><br>                                         Plaintiffs, <br><br> v. <br><br> ELIJAH E. CUMMINGS, in his official capacity as Chairman of the House Committee on Oversight and Reform; PETER KENNY, in his official capacity as Chief Investigative Counsel of the House Committee on Oversight and Reform; and MAZARS USA LLP, <br><br>                                       Defendants. | Civil Action No. 1:19-cv-01136-APM |

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION

## INTRODUCTION

The House of Representatives desperately wants President Donald J. Trump's private financial records. But instead of attempting to obtain them from the President, House Oversight Committee Chairman Elijah Cummings and Chief Investigative Counsel Peter Kenny issued a subpoena to the President's accounting firm, Mazars USA LLP. That sweeping subpoena seeks nearly a decade's worth of accounting records, communications, and other information about President Trump and a number of his businesses (the Plaintiffs here). This case, accordingly, presents an important dispute between the President and a committee of the House of Representatives about whether the subpoena has "a legitimate legislative purpose" or is instead unconstitutional. *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 n.14 (1975).

What makes judicial intervention so urgent is that the subpoena instructs Mazars to produce Plaintiffs' confidential information by 12:00 P.M. on April 29, 2019. Plaintiffs thus seek a temporary restraining order and preliminary injunction to ensure that they have a fair opportunity to contest the subpoena's constitutional legitimacy. To be precise: Plaintiffs request that, by noon on April 29, the Court enter a TRO that prohibits Defendants from complying with or enforcing the subpoena until the Court rules on Plaintiffs' preliminary-injunction motion. Then, after a hearing is held, Plaintiffs request that the Court enter a preliminary injunction that prohibits Defendants from complying with or enforcing the subpoena until this Court reaches a final decision on the merits of this important constitutional dispute. Only this preliminary relief will ensure that Congress' attempt to enforce the subpoena does not interfere with the "arduous and delicate task" the Constitution has assigned to this Court. *Watkins v. United States*, 354 U.S. 178, 198 (1957).

Two lines of circuit precedent decisively support Plaintiffs' request. Foremost, the D.C. Circuit has held—in a procedurally *identical* case—that the district court should issue "a stay in the enforcement of the [congressional] subpoena[]" "until [it] has an opportunity fully to consider" these

"serious constitutional questions" on the merits so that "compliance by [the recipient of the subpoena] does not frustrate … judicial inquiry." *U.S. Servicemen's Fund v. Eastland*, 488 F.2d 1252, 1256-57 (D.C. Cir. 1973), *subsequent merits decision rev'd on other grounds*, 421 U.S. 491. *Eastland* is controlling. The decision squarely holds that interim relief is warranted under precisely these factual circumstances.

The D.C. Circuit has also held that the recipient of a subpoena should not be subjected to conflicting commands while the legitimacy of the subpoena is being litigated. *See United States v. Deloitte LLP*, 610 F.3d 129, 142 (D.C. Cir. 2010). Mazars has contractual and state-law duties to maintain the confidentiality of Plaintiff's financial documents, and a subpoena does not relieve Mazars of that obligation unless it is "validly issued and enforceable." AICPA Code of Prof'l Conduct §1.700.001.02. Yet the Oversight Committee might threaten to take enforcement action against Mazars if it does not comply with the subpoena by noon on April 29. Granting interim relief not only protects Plaintiffs, then, it protects Mazars too.

But Plaintiffs would be entitled to interim relief even if circuit precedent did not already dictate that result. First, Plaintiffs are likely to prevail on the merits of their claim that the subpoena is not supported by a "legitimate legislative purpose." *Eastland*, 421 U.S. at 501 n.14. Chairman Cummings has not identified any legislative purpose—let alone a potential piece of legislation—that this request is designed to advance. At best, the Oversight Committee seeks these documents so it can conduct law-enforcement activities that the Supreme Court has held are reserved to the other branches. More likely, though, the Committee wants to collect and "expose" the President's financial documents "for the sake of exposure." *Watkins*, 354 U.S. at 200. That purpose is likewise illegitimate and thus provides no constitutional footing for the subpoena.

Second, Plaintiffs will suffer irreparable harm if this Court does not intervene to preserve the status quo. There will be no way to unring the bell once Mazars produces the requested information. The Committee will have reviewed confidential documents that this Court may ultimately determine

were unconstitutionally subpoenaed in order to illegitimately harass the President. No damages award could ever make Plaintiffs whole. And the denial of temporary relief could prevent any meaningful judicial review of Plaintiffs' claims. This is the quintessential case of irreparable harm.

Third, the balance of harms and public interest favor interim relief. Mazars will suffer no harm if interim relief is granted. Indeed, it will benefit greatly. The only harm that the other Defendants will suffer, if they prevail on the merits, is some delay before receiving the documents. Courts have consistently held that such harm is given little weight and pales in comparison to the severe harm that Plaintiffs will suffer if the status quo is not preserved. And there is no public interest in allowing Congress to subvert judicial review by enforcing a subpoena that has been challenged on constitutional grounds. To the contrary, the public interest is served by ensuring that this important constitutional dispute between two coequal branches is fully and fairly resolved before the Committee gets documents that it is unwilling to ask the President for directly.

Finally, granting the TRO will allow the preliminary-injunction motion to be adjudicated in an orderly fashion. Otherwise, Plaintiffs will be forced to seek that same relief from the D.C. Circuit and the Supreme Court. There is no reason to burden the appellate courts with emergency requests. The TRO would be for a limited duration, would ensure that the status quo is preserved while a request for more fulsome interim relief is considered, and would cause no appreciable harm to Defendants or to the public. Plaintiffs thus respectfully request that the Court grant a TRO by 12:00 P.M. on April 29, 2019.

## BACKGROUND

After the 2018 midterm elections, the Democratic Party won a majority of seats in the House of Representatives and assumed control of all congressional committees. Complaint ("Compl.") ¶26. Defendant Cummings is the House Oversight Committee Chairman. *Id.* ¶15. Once the Democrats gained power, Speaker Pelosi, Chairman Cummings, and others announced that they would

aggressively issue subpoenas to force disclosure of President Trump's private finances. *Id.* ¶¶27-30. House Democrats are now executing their plan in earnest. Several House committees have issued a flurry of subpoenas and requests for information about the President's family, personal finances, and businesses. *Id.* ¶31.

This lawsuit is about one such subpoena. On April 15, 1019, Chairman Cummings subpoenaed Mazars for a litany of financial records, underlying documents, and confidential communications, regarding both the President and a number of his businesses, from 2011 through 2018. *See* Consovoy Decl., Exh. A. The Chairman issued this subpoena based on the testimony of Michael Cohen, an admitted perjurer who told the House Oversight Committee that financial statements prepared by Mazars in 2011, 2012, and 2013 misstated the President's net worth. *See* 3/20/19 Ltr. from Cummings to Mazars, bit.ly/2IxEelO. Pointing to his supposed powers to "conduct[] oversight of … the President" and to "investigate 'any matter' at 'any time,'" the Chairman asked Mazars to voluntarily produce the information. *Id.* Mazars refused, citing its legal duty to protect its clients' confidential information. So Chairman Cummings subpoenaed Mazars. His request includes "[a]ll statements of financial condition, annual statements, periodic financial reports, and independent auditors' reports," "all engagement agreements or contracts," "[a]ll underlying, supporting, or source documents and records," and "[a]ll memoranda, notes, and communications" between Mazars and "Donald J. Trump, Donald J. Trump Revocable Trust, the Trump Organization Inc., the Trump Organization LLC, the Trump Corporation, DJT Holdings LLC, the Trump Old Post Office LLC, the Trump Foundation, and any parent, subsidiary, affiliate, joint venture, predecessor, or successor of the foregoing" from 2011 through 2018. Consovoy Decl., Exh. A.

Plaintiffs challenge the constitutionality of that subpoena. But their confidential information is in Mazars' hands, and the subpoena instructs Mazars to produce the information by noon on April

29. Plaintiffs thus need a TRO and then a preliminary injunction to maintain the status quo and allow them to litigate the subpoena's validity.

## ARGUMENT

The standards for a TRO and a preliminary injunction are largely the same. *See Vencor Nursing Centers, L.P. v. Shalala*, 63 F. Supp. 2d 1, 7 n.5 (D.D.C. 1999). The movant needs to show "'[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" *Cayuga Nation v. Zinke*, 302 F. Supp. 3d 362, 367 (D.D.C. 2018). "Ultimately, a court must weigh the factors depending on the circumstances of the particular case." *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 83 (D.D.C. 2018); *accord Cuomo v. U.S. Nuclear Reg. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).

That standard is met here. First, circuit precedent requires maintenance of the status quo while this important constitutional question is fully litigated. Second, Plaintiffs would satisfy the four-factor test even if there were no controlling circuit precedent. Their legal claim is meritorious, disclosure of their confidential information constitutes quintessential irreparable harm, and every other equitable consideration—including the public interest—favors interim relief. Therefore, the Court should grant Plaintiffs' requests for a TRO and a preliminary injunction.

## I.   Circuit precedent requires preservation of the status quo so this constitutional dispute can be litigated.

Under two lines of circuit precedent, the Court should grant Plaintiffs' requests for a TRO and a preliminary injunction.

***First***, the D.C. Circuit granted precisely that relief in *Eastland*, a case procedurally identical to this one. In *Eastland*, a congressional committee subpoenaed the plaintiff's bank for "records pertaining to or involving the [plaintiff's] account or accounts." 488 F.2d at 1254. The plaintiff sued the committee chairman, committee counsel, and the bank for a declaration that the subpoena was

unenforceable and for an injunction prohibiting the defendants from enforcing or complying with it. *Id.* at 1254-56. When the district court denied a TRO, the D.C. Circuit reversed and stayed the subpoena's enforcement. *See id.* at 1256.

The "decisive element" favoring a stay, the D.C. Circuit explained, was the fact that "unless a stay is granted this case will be mooted, and there is likelihood, that irreparable harm will be suffered by [plaintiff when the subpoena's due date arrives]." *Id.* The court added that the stay was warranted because the case raised "serious constitutional questions that require more time" and issues that are "of such significance that they require" further "consideration and deliberation." *Id.* When the district court later denied a preliminary injunction on remand, the D.C. Circuit reversed again and entered another stay. *See id.* at 1257. In particular, the D.C. Circuit ordered the district court to fully consider the merits of plaintiff's claim on final judgment to "ensure" that the case "is determined with the best available perspective, both as to the underlying evidence and the appraisal thereof by the District Judge." *Id.* at 1257.

*Eastland* resolves Plaintiffs' entitlement to interim relief. Here too, Plaintiffs face "irreparable harm" if they do not receive interim relief before the subpoena's due date. *Id.* at 1256. And just like the *Eastland* plaintiff, Plaintiffs raise "serious constitutional questions" that should be resolved once there has been full merits briefing, oral argument, and this Court's "best available perspective" after thoughtful "consideration and deliberation." *Id.* at 1256-57. If anything, the constitutional questions raised in this case—a partisan attempt by Congress to conduct a law-enforcement investigation into the personal finances of a sitting President—are far more serious and important than the questions in *Eastland.*

The D.C. Circuit was right to prioritize preservation of the status quo in cases like these. When the plaintiff challenges a subpoena to a third party, interim relief is essential to protect the plaintiff's access to judicial review. "[C]ompliance by the third person could frustrate any judicial inquiry" into

"whether a legitimate legislative purpose is present." *Eastland*, 421 U.S. at 501 n.14. Allowing this to happen would wrongly deny the plaintiff's rights and "immunize the subpoena from challenge" based on "the fortuity that documents sought by a congressional subpoena are not in the hands of a party claiming injury from the subpoena." *United States v. AT&T Co.*, 567 F.2d 121, 129 (D.C. Cir. 1977). Once the plaintiff's confidential information is released, after all, it is often impossible to put the toothpaste back in the tube. This problem explains why courts routinely preserve the status quo in cases involving the threatened disclosure of confidential information. *See, e.g.*, *Council on Am.-Islamic Relations v. Gaubatz*, 667 F. Supp. 2d 67, 76 (D.D.C. 2009); *United States v. Wash. Post Co.*, 446 F.2d 1322, 1324-25 (D.C. Cir. 1971).

**Second**, the D.C. Circuit has stated that district courts should preserve the status quo to protect the third party who receives the subpoena and holds the plaintiff's information. As a matter of contract and New York law, accountants like Mazars have a legal obligation to keep their clients' information confidential. *See* AICPA Code §1.700.001.01 (prohibiting accountants from "disclos[ing] any confidential client information without the specific consent of the client"); 8 N.Y.C.R.R. §29.10(c) ("[U]nprofessional conduct" by accountants includes the "revealing of personally identifiable facts, data or information obtained in a professional capacity without the prior consent of the client."). A subpoena does not exempt Mazars from this duty unless it is "validly issued and enforceable." AICPA Code §1.700.001.02. But the validity and enforceability of the subpoena is exactly what Plaintiffs challenge in this lawsuit. Mazars thus faces an unfair choice: ignore the subpoena and risk Congress taking adverse action against them, or comply with the subpoena and risk liability to Plaintiffs if they ultimately prove the subpoena's invalidity.

The D.C. Circuit has crafted a solution to this problem. It allows for an "orderly resolution of [the] disputed question" by permitting the accountant to "merely await a court ruling on the [plaintiff's]

challenge." *AT&T Co.*, 567 F.2d at 129. Mazar cannot be held in contempt or otherwise penalized by Congress until this Court resolves Plaintiffs' challenge to the subpoena:

> [The relevant AICPA] Rule … explains that it "shall not be construed ... to affect in any way the [accountant's] obligation to comply with a validly issued and enforceable subpoena or summons." But [the client] challenges the enforceability of a subpoena…. Thus [the accountant] c[an] refuse to produce the documents, thereby allowing [the client to litigate the subpoena], *without violating its obligation to comply with enforceable subpoenas.*

*United States v. Deloitte LLP*, 610 F.3d 129, 142 (D.C. Cir. 2010) (emphasis added).[1]

In short, whether or not Chairman Cummings' subpoena is ultimately enforceable, the law is clear that Congress cannot take adverse action against Mazars for honoring its duty to maintain client confidences *while Plaintiffs litigate the subpoena's validity.* Interim relief that prohibits Defendants from enforcing or complying with the subpoena during the pendency of this litigation would simply follow this settled rule. This Court can—and should—grant Plaintiffs' requests for a TRO and preliminary injunction based on this line of precedent.[2]

## II.   The four factors for a TRO and preliminary injunction all favor Plaintiffs.

Even if *Eastland* and *Deloitte* were not controlling, a *de novo* application of the four-factor test would lead to the same result. Plaintiffs are likely to prevail on the merits of their constitutional claim, Plaintiffs will suffer irreparable harm if the status quo is not preserved, and the balance of harms and public interest favor interim relief.

---

[1] *Deloitte* involved a judicial subpoena, not a congressional subpoena. But, as the D.C. Circuit has explained, the effect and limits on judicial and congressional subpoenas are "the same." *Nixon v. Sirica*, 487 F.2d 700, 770 & n.33 (D.C. Cir. 1973).

[2] Interim relief would not even be needed if Defendants Cummings and Kenney would follow circuit precedent, commit to take no adverse action against Mazars pending the outcome of this litigation, and thereby allow Mazars to honor its contractual and state-law obligations to preserve the confidentiality of Plaintiffs' documents. According to their counsel, however, Defendants Cummings and Kenney "reserve[] the right to take any action necessary" to enforce the subpoena "once the date for compliance has passed."

A.      Likelihood of Success on the Merits

Not infrequently, federal courts adjudicate the legality of congressional subpoenas. Most such cases follow a familiar fact pattern: Congress issues a subpoena, the target does not comply, Congress tries to force compliance in federal court, and the target raises the illegality of the subpoena as a defense in litigation.

But this is not the only way to challenge a congressional subpoena. When Congress "seeks information directly from a party," that party "can resist and thereby test the subpoena." *Eastland*, 421 U.S. at 501 n.14. When Congress "seeks that same information from a third person," however, this option is not available; the third party might not have an interest in protecting the information or resisting the subpoena, and its "compliance" with the subpoena "could frustrate any judicial inquiry." *Id.* For that reason, the law allows the person whose information will be exposed to sue in federal court for an "injunction or declaratory judgment." *Eastland*, 488 F.2d at 1259. The key question in such a case is "whether a legitimate legislative purpose is present." *Eastland*, 421 U.S. at 501.

The "legitimate legislative purpose" requirement stems directly from the Constitution. "The powers of Congress … are dependent solely on the Constitution," and "no express power in that instrument" allows Congress to investigate individuals or to issue compulsory process. *Kilbourn v. Thompson*, 103 U.S. 168, 182-89 (1880). The Constitution instead permits Congress to enact certain kinds of *legislation. See, e.g.*, Art. I, §8. Thus, Congress' power to investigate "is justified solely as an adjunct to the legislative process." *Watkins*, 354 U.S. at 197. "Congress is not invested with a general power to inquire into private affairs. The subject of any inquiry always must be one on which legislation could be had." *Eastland*, 421 U.S. at 504 n.15 (cleaned up); *see also Quinn v. United States*, 349 U.S. 155, 161 (1955) ("'[T]he power to investigate" does not "extend to an area in which Congress is forbidden to legislate.").

"Oversight" and "transparency," in a vacuum, are not legitimate legislative purposes that can justify subpoenaing a private citizen. For more than a century, in fact, the Supreme Court has been quite "sure" that neither the House nor Senate "possesses the general power of making inquiry into the private affairs of the citizen." *Kilbourn*, 103 U.S. at 190. "[T]here is no congressional power to expose for the sake of exposure." *Watkins*, 354 U.S. at 200. "No inquiry is an end in itself; it must be related to, and in furtherance of, a legitimate task of the Congress." *Id.* at 187.

Additionally, because Congress must have a legitimate *legislative* purpose, it cannot use subpoenas to exercise "any of the powers of law enforcement." *Quinn*, 349 U.S. at 161. Those powers "are assigned under our Constitution to the Executive and the Judiciary." *Id.* Put simply, Congress is not "a law enforcement or trial agency," and congressional investigations conducted "for the personal aggrandizement of the investigators" or "to 'punish' those investigated" are "indefensible." *Watkins*, 354 U.S. at 187. Our tripartite system of separated powers requires that "any one of the[] branches shall not be permitted to encroach upon the powers confided to the others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other." *Kilbourn*, 103 U.S. at 190-91.

Finally, when a subpoena is issued by a single committee, any legislative purpose is not legitimate unless it falls within that committee's jurisdiction. "The theory of a committee inquiry is that the committee members are serving as the representatives of the parent assembly in collecting information for a legislative purpose." *Watkins*, 354 U.S. at 200. Congress therefore must "spell out that group's jurisdiction and purpose with sufficient particularity … in the authorizing resolution," which "is the committee's charter." *Id.* at 201. The committee "must conform strictly to the resolution." *Exxon Corp. v. FTC*, 589 F.2d 582, 592 (D.C. Cir. 1978). And when an investigation is "novel" or "expansive," courts will construe the committee's jurisdiction "narrowly." *Tobin v. United States*, 306 F.2d 270, 275 (D.C. Cir. 1962).

Plaintiffs will likely prove that Chairman Cummings' subpoena is not supported by a legitimate legislative purpose. In his various letters and memoranda, Chairman Cummings has *never* identified a single piece of legislation he is considering. The justification for his subpoena, he says instead, is to verify a convicted perjurer's allegation that the President misrepresented his net worth more than five years ago. *See* 3/20/19 Ltr. from Cummings to Mazars, *supra*. But the conduct of a private citizen years before he was even a candidate for public office has nothing to do with government oversight. And an investigation into the accuracy of a private citizen's past financial statements is a quintessential law-enforcement task reserved to the executive and judicial branches. As the Ranking Member on the Oversight Committee has repeatedly stressed, Chairman Cummings has never articulated a legitimate legislative purpose for his subpoena. *See, e.g.*, 4/17/19 Ltr. from Jordan to Cummings, bit.ly/2GtiBjl. That is because none exists. The subpoena is a transparent attempt to "expose" the President's finances "for the sake of exposure." *Watkins*, 354 U.S. at 200.

## B.     Irreparable Harm

Plaintiffs undoubtedly face "irreparable harm" if the Court does not issue an order preserving the status quo by the date Chairman Cummings set for Mazars to comply with the subpoena. If the Court does not intervene, Mazars could give the House Oversight Committee nearly a decade's worth of Plaintiffs' financial information—private information that was shared with Mazars based on an express assurance of confidentiality. If Mazars produces that information, the status quo can never be restored. As one court has recognized:

> Once confidentiality is breached, the harm is done and cannot be undone. Plaintiff cannot subsequently perform its commitment to its clients to protect the confidentiality of the documents and the information which they contain. There is no way to recapture and remove from the knowledge of others information improperly disclosed by Defendant. No court order or specific performance can be framed to accomplish that end, and no award of money damages will change the fact that information which Plaintiff was entitled to have kept from the knowledge of third parties is no longer shielded from their gaze. Confidentiality, like pregnancy, is an all or nothing proposition; either it exists or it does not exist.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop*, 839 F. Supp. 68, 72 (D. Me. 1993) (finding irreparable harm). "Once the documents are surrendered," in other words, "confidentiality will be lost for all time. The status quo could never be restored." *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979); *see PepsiCo, Inc. v. Redmond,* 1996 WL 3965, at *30 (N.D. Ill. 1996) ("[J]ust as it is impossible to unring a bell, once disclosed, … confidential information lose their secrecy forever"); *Metro. Life Ins. Co. v. Usery*, 426 F. Supp. 150, 172 (D.D.C. 1976) ("Once disclosed, such information would lose its confidentiality forever.").

More urgently, because the due date for compliance with the subpoena is only days away, immediate intervention is needed to preserve the opportunity for the Plaintiffs to secure judicial review of their claims. "Courts routinely issue injunctions to stay the status quo when" events might otherwise "moot the losing party's right to appeal." *John Doe Co. v. CFPB*, 235 F.Supp.3d 194, 206 (D.D.C. 2017); *see Ctr. For Int'l Envtl. Law v. Office of U.S. Trade Rep.*, 240 F. Supp. 2d 21, 22-23 (D.D.C. 2003) (explaining that the movant has made "a strong showing of irreparable harm" where disclosure would moot appeal); *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309, (1989) (Marshall, J., in chambers) ("The fact that disclosure would moot that part of the Court of Appeals' decision requiring disclosure … create[s] an irreparable injury."). Plaintiffs have raised important constitutional claims. Yet denying them interim relief may "entirely destroy [their] rights to secure meaningful review." *Providence Journal Co.*, 595 F.2d at 890. That is classic irreparable harm.

### C.     Balance of the Equities and Public Interest

The balance of equities and public interest also weigh in Plaintiffs' favor. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *FBME Bank Ltd. v. Lew*, 125 F. Supp. 3d 109, 127 (D.D.C. 2015). Unlike the irreparable harm that Plaintiffs will suffer absent interim relief, there is no harm to Defendants by delaying production while the parties litigate the subpoena's validity. For its part, Mazars will actually *benefit* from preserving the status quo.

As explained, Mazars risks adverse action from Congress if it does not produce the documents and risks liability to Plaintiffs if it complies with a subpoena that is later declared to be invalid. Interim relief would eliminate the uncertainty Mazars currently faces while the subpoena's constitutionality is adjudicated.

As for the other Defendants, they have no urgent need for the subpoenaed documents: "[T]he events at issue are already several years old and if the [defendants] prevail[] in this litigation, the records will ultimately be produced." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 514 F. Supp. 2d 7, 11 (D.D.C. 2007). Indeed, the vast majority of documents the Committee seeks predate the President's nomination—let alone his election. The Committee's "interest in receiving the records immediately" thus "poses no threat of irreparable harm to them." *Shapiro v. U.S. Dep't of Justice*, 2016 WL 3023980, at *7 (D.D.C. May 25, 2016) (quoting *John Doe Agency*, 488 U.S. at 1309 (Marshall, J., in chambers)); *see Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014) (explaining that "desire to have [the documents] in an expedited fashion without more is insufficient to constitute irreparable harm"). Interim relief only "postpones the moment of disclosure … by whatever period of time may be required" to finally adjudicate the merits of Plaintiffs' claim. *Providence Journal*, 595 F.2d at 890; *see Fund For Animals v. Norton*, 281 F. Supp. 2d 209, 222 (D.D.C. 2003) (rejecting government's claim of harm in having its action "delayed for a short period of time pending resolution of this case on the merits"); *22nd Avenue Station, Inc. v. City of Minneapolis*, 429 F.Supp.2d 1144, 1152 (D. Minn. 2006) (similar); *Inchcape Shipping Services Holdings Ltd. v. United States*, 2014 WL 12838793, at *3 (Fed. Cl. 2014) (similar). In any, event, whatever interest the Oversight Committee may have in immediately obtaining these documents pales in comparison to Plaintiffs' interest in securing judicial review before the status quo is forever altered.

Last, the public interest weighs strongly in favor of preserving the status quo. The D.C. Circuit "has clearly articulated that the public has an interest in the government maintaining procedures that

comply with constitutional requirements." *Ass'n of Community Organizations For Reform Now (ACORN) v. FEMA*, 463 F. Supp. 2d 26, 36 (D.D.C. 2006) (citing *O'Donnell Const. Co. v. District of Columbia,* 963 F.2d 420, 429 (D.C. Cir. 1992)). The Constitution entrusts this Court to determine whether Congress has "assumed a power which could only be properly exercised by another branch of the government." *Kilbourn*, 103 U.S. at 192. Denying the interim relief that Plaintiffs seek, in short, would "abdicate the responsibility placed by the Constitution upon the judiciary to insure that the Congress" has not acted illegitimately in issuing this sweeping subpoena for the President's confidential financial documents. *Watkins* 354 U.S. at 198-99. Allowing the House Oversight Committee to evade judicial review is not in the public interest.

## CONCLUSION

Plaintiffs respectfully ask this Court to enter a TRO prohibiting Defendants from enforcing or complying with Chairman Cummings' subpoena so that the Court can decide Plaintiffs' motion for a preliminary injunction. The Court should then hear argument on Plaintiffs' motion and enter a preliminary injunction prohibiting Defendants from enforcing or complying with the subpoena until the Court can issue a final judgment.

Respectfully submitted,

Dated: April 22, 2019

Stefan C. Passantino (D.C. Bar #480037)
MICHAEL BEST & FRIEDRICH LLP
1000 Maine Ave. SW, Ste. 400
Washington, D.C. 20024
(202) 747-9582
spassantino@michaelbest.com

*Counsel for The Trump Organization, Inc., Trump Organization LLC, The Trump Corporation, DJT Holdings LLC, The Donald J. Trump Revocable Trust, and Trump Old Post Office LLC*

 *s/ William S. Consovoy*

William S. Consovoy (D.C. Bar #493423)
Cameron T. Norris
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Blvd., Ste. 700
Arlington, VA 22201
(703) 243-9423
will@consovoymccarthy.com
cam@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com

*Counsel for President Donald J. Trump*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DONALD J. TRUMP; THE TRUMP ORGANIZATION, INC.; TRUMP ORGANIZATION LLC; THE TRUMP CORPORATION; DJT HOLDINGS LLC; THE DONALD J. TRUMP REVOCABLE TRUST; and TRUMP OLD POST OFFICE LLC,<br><br>         Plaintiffs,<br><br>v.<br><br>ELIJAH E. CUMMINGS, in his official capacity as Chairman of the House Committee on Oversight and Reform; PETER KENNY, in his official capacity as Chief Investigative Counsel of the House Committee on Oversight and Reform; and MAZARS USA LLP,<br><br>         Defendants. | Civil Action No. 1:19-cv-01136-APM |

## <u>DECLARATION OF WILLIAM S. CONSOVOY</u>

1.      I am an attorney at the law firm Consovoy McCarthy Park PLLC and counsel for plaintiff President Donald J. Trump in his personal capacity.

2.      I am over the age of eighteen and under no mental disability or impairment. I have personal knowledge of the following facts and, if called as a witness, would competently testify to them.

3.      Exhibit A to this declaration is a true and accurate copy of the April 15, 2019 subpoena from the House Committee on Oversight and Reform to Mazars USA LLP.

Per 28 U.S.C. §1746, I declare under penalty of perjury that the above is true and correct to the best of my knowledge.

Executed on April 22, 2019.

                                _s/ William S. Consovoy_

# Exhibit A

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

_To_ Mazars USA LLP
_____

You are hereby commanded to be and appear before the
Committee on Oversight and Reform                                          ▼
_____

of the House of Representatives of the United States at the place, date, and time specified below.

☑  **to produce the things identified on the attached schedule** touching matters of inquiry committed to said
committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of production: 2157 Rayburn House Office Building, Washington DC 20515
>
> Date: April 29, 2019 _____                    Time: 12:00 (noon) _____

☐  **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee;
and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date: _____                    Time: _____

☐  **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and
you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date: _____                    Time: _____

_To_ any authorized staff member or the U.S. Marshals Service _____
_____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at

the city of Washington, D.C. this 15th day of April , 20 19 .

_____
_Chairman or Authorized Member_

Attest:
_____
_Clerk_

## PROOF OF SERVICE

Subpoena for Mazars USA LLP

Address c/o Jerry Bernstein, Esq., BlankRome LLP

405 Lexington Ave., New York, NY 10174

before the Committee on Oversight and Reform

*U.S. House of Representatives*
*116th Congress*

Served by (print name) Peter Kenny

Title Chief Investigative Counsel, Committee on Oversight and Reform

Manner of service Email to Jerry Bernstein, BlankRome LLP, Counsel to Mazars USA LLP

Date April 15, 2019

Signature of Server

Address 2157 Rayburn House Office Building, Washington, D.C. 20515

## SCHEDULE A

With respect to Donald J. Trump, Donald J. Trump Revocable Trust, the Trump
Organization Inc., the Trump Organization LLC, the Trump Corporation, DJT Holdings
LLC, the Trump Old Post Office LLC, the Trump Foundation, and any parent, subsidiary,
affiliate, joint venture, predecessor, or successor of the foregoing:

1.     All statements of financial condition, annual statements, periodic financial
       reports, and independent auditors' reports prepared, compiled, reviewed, or
       audited by Mazars USA LLP or its predecessor, WeiserMazars LLP;

2.     Without regard to time, all engagement agreements or contracts related to the
       preparation, compilation, review, or auditing of the documents described in Item
       Number 1;

3.     All underlying, supporting, or source documents and records used in the
       preparation, compilation, review, or auditing of documents described in Item
       Number 1, or any summaries of such documents and records relied upon, or any
       requests for such documents and records; and

4.     All memoranda, notes, and communications related to the preparation,
       compilation, review, or auditing of the documents described in Item Number 1,
       including, but not limited to:

       a.     all communications between Donald Bender and Donald J. Trump or any
              employee or representative of the Trump Organization; and

       b.     all communications related to potential concerns that records, documents,
              explanations, or other information, including significant judgments,
              provided by Donald J. Trump or other individuals from the Trump
              Organization, were incomplete, inaccurate, or otherwise unsatisfactory.

Unless otherwise noted, the time period covered by this subpoena includes calendar years
2011 through 2018.

## Schedule Instructions

1. In complying with this subpoena, you are required to produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. Produce all documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party.

2. Subpoenaed documents, and all documents reasonably related to the subpoenaed documents, should not be destroyed, altered, removed, transferred, or otherwise made inaccessible to the Committee.

3. In the event that any entity, organization, or individual denoted in this subpoena is or has been known by any name other than that herein denoted, the subpoena shall be read also to include that alternative identification.

4. The Committee's preference is to receive documents in electronic form (i.e., CD, memory stick, thumb drive, or secure file transfer) in lieu of paper productions.

5. Documents produced in electronic format should be organized, identified, and indexed electronically.

6. Electronic document productions should be prepared according to the following standards:

   a. The production should consist of single page Tagged Image File ("TIF"), files accompanied by a Concordance-format load file, an Opticon reference file, and a file defining the fields and character lengths of the load file.

   b. Document numbers in the load file should match document Bates numbers and TIF file names.

   c. If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

   d. All electronic documents produced to the Committee should include the following fields of metadata specific to each document, and no modifications should be made to the original metadata:

   BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME, SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE, ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD,

INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

7. Documents produced to the Committee should include an index describing the contents of the production. To the extent more than one CD, hard drive, memory stick, thumb drive, zip file, box, or folder is produced, each should contain an index describing its contents.

8. Documents produced in response to this subpoena shall be produced together with copies of file labels, dividers, or identifying markers with which they were associated when the subpoena was served.

9. When you produce documents, you should identify the paragraph(s) in the subpoena schedule to which the documents respond.

10. The fact that any other person or entity also possesses non-identical or identical copies of the same documents shall not be a basis to withhold any information.

11. The pendency of or potential for litigation shall not be a basis to withhold any information.

12. In accordance with 5 U.S.C.§ 552(d), the Freedom of Information Act (FOIA) and any statutory exemptions to FOIA shall not be a basis for withholding any information.

13. Pursuant to 5 U.S.C. § 552a(b)(9), the Privacy Act shall not be a basis for withholding information.

14. If compliance with the subpoena cannot be made in full by the specified return date, compliance shall be made to the extent possible by that date. An explanation of why full compliance is not possible shall be provided along with any partial production.

15. In the event that a document is withheld on the basis of privilege, provide a privilege log containing the following information concerning any such document: (a) every privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author, addressee, and any other recipient(s); (e) the relationship of the author and addressee to each other; and (f) the basis for the privilege(s) asserted. If a claimed privilege applies to only a portion of any document, that portion only should be withheld and the remainder of the document should be produced. As used herein, "claim of privilege" includes, but is not limited to, any claim that a document either may or must be withheld from production pursuant to any statute, rule, or regulation.

16. In complying with the subpoena, be apprised that (unless otherwise determined by the Committee) the Committee does not recognize: any purported non-disclosure privileges associated with the common law including, but not limited to, the deliberative-process privilege, the attorney-client privilege, and attorney work product protections; any purported privileges or protections from disclosure under the Freedom of Information Act

2

or the Privacy Act; or any purported contractual privileges, such as non-disclosure agreements.

17.    Any assertion by a subpoena recipient of any such non-constitutional legal bases for withholding documents or other materials, for refusing to answer any deposition question, or for refusing to provide hearing testimony, shall be of no legal force and effect and shall not provide a justification for such withholding or refusal, unless and only to the extent that the Committee (or the chair of the Committee, if authorized) has consented to recognize the assertion as valid.

18.    If any document responsive to this subpoena was, but no longer is, in your possession, custody, or control, identify the document (by date, author, subject, and recipients), and explain the circumstances under which the document ceased to be in your possession, custody, or control.

19.    If a date or other descriptive detail set forth in this subpoena referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the subpoena, produce all documents that would be responsive as if the date or other descriptive detail were correct.

20.    This subpoena is continuing in nature and applies to any newly-discovered information. Any record, document, compilation of data, or information not produced because it has not been located or discovered by the return date shall be produced immediately upon subsequent location or discovery.

21.    All documents shall be Bates-stamped sequentially and produced sequentially.

22.    Two sets of each production shall be delivered, one set to the Majority Staff and one set to the Minority Staff. When documents are produced to the Committee, production sets shall be delivered to the Majority Staff in Room 2157 of the Rayburn House Office Building and the Minority Staff in Room 2105 of the Rayburn House Office Building.

23.    Upon completion of the production, submit a written certification, signed by you or your counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control that reasonably could contain responsive documents; and (2) all documents located during the search that are responsive have been produced to the Committee.

## Definitions

1.    The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, data, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, communications, electronic mail (email), contracts, cables, notations of any

3

type of conversation, telephone call, meeting or other inter-office or intra-office communication, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape, or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

2.      The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in a meeting, by telephone, facsimile, mail, releases, electronic message including email (desktop or mobile device), text message, instant message, MMS or SMS message, message application, or otherwise.

3.      The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this subpoena any information that might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neutral genders.

4.      The term "including" shall be construed broadly to mean "including, but not limited to."

5.      The term "Company" means the named legal entity as well as any units, firms, partnerships, associations, corporations, limited liability companies, trusts, subsidiaries, affiliates, divisions, departments, branches, joint ventures, proprietorships, syndicates, or other legal, business or government entities over which the named legal entity exercises control or in which the named entity has any ownership whatsoever.

6.      The term "identify," when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; (b) the individual's business or personal address and phone number; and (c) any and all known aliases.

7.      The term "related to" or "referring or relating to," with respect to any given subject, means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is pertinent to that subject in any manner whatsoever.

8.      The term "employee" means any past or present agent, borrowed employee, casual

employee, consultant, contractor, de facto employee, detailee, fellow, independent contractor, intern, joint adventurer, loaned employee, officer, part-time employee, permanent employee, provisional employee, special government employee, subcontractor, or any other type of service provider.

9. The term "individual" means all natural persons and all persons or entities acting on their behalf.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DONALD J. TRUMP; THE TRUMP ORGANIZATION, INC.; TRUMP ORGANIZATION LLC; THE TRUMP CORPORATION; DJT HOLDINGS LLC; THE DONALD J. TRUMP REVOCABLE TRUST; and TRUMP OLD POST OFFICE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ELIJAH E. CUMMINGS, in his official capacity as Chairman of the House Committee on Oversight and Reform; PETER KENNY, in his official capacity as Chief Investigative Counsel of the House Committee on Oversight and Reform; and MAZARS USA LLP,<br><br>Defendants. | Civil Action No. 1:19-cv-01136-APM |

**[PROPOSED] ORDER GRANTING PLAINTIFFS'
APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

After considering Plaintiffs' application for a TRO and the parties' briefs, Plaintiffs' application is GRANTED. Plaintiffs are entitled to a preliminary freezing of the status quo under *U.S. Servicemen's Fund v. Eastland*, 488 F.2d 1252 (D.C. Cir. 1973), and *United States v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010). Plaintiffs also satisfy the traditional four-factor test for a TRO: They are likely to succeed on the merits, a TRO is needed to prevent irreparable harm, and the balance of equities and public interest lie with Plaintiffs. It is hereby ORDERED that, until this Court adjudicates the merits of Plaintiffs' motion for a preliminary injunction:

1. Chairman Cummings' subpoena is stayed;

2. Defendant Mazars USA LLP (and its successors in office, officers, agents, servants, employees, attorneys, and anyone acting in concert with it) is enjoined from disclosing,

revealing, delivering, or producing the information requested in Chairman Cummings' subpoena, or otherwise taking any action to comply with Chairman Cummings' subpoena;

3. Defendant Peter Kenny (and his successors in office, officers, agents, servants, employees, attorneys, and anyone acting in concert with him) is enjoined from taking any adverse action against Mazars for not complying with Chairman Cummings' subpoena, or taking any other action to enforce the subpoena; and

4. Defendant Elijah E. Cummings (and his successors in office, officers, agents, servants, employees, attorneys, and anyone acting in concert with him) is enjoined from taking any adverse action against Mazars for not complying with his subpoena, or taking any other action to enforce his subpoena.

Dated: April _____, 2019

_____
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DONALD J. TRUMP; THE TRUMP ORGANIZATION, INC.; TRUMP ORGANIZATION LLC; THE TRUMP CORPORATION; DJT HOLDINGS LLC; THE DONALD J. TRUMP REVOCABLE TRUST; and TRUMP OLD POST OFFICE LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ELIJAH E. CUMMINGS, in his official capacity as Chairman of the House Committee on Oversight and Reform; PETER KENNY, in his official capacity as Chief Investigative Counsel of the House Committee on Oversight and Reform; and MAZARS USA LLP, <br><br> Defendants. | Civil Action No. 1:19-cv-01136-APM |

## RULE 65.1(a) CERTIFICATE OF COUNSEL

Per Local Rule 65.1(a), I certify that, at approximately 2:40 P.M. on April 22, 2019, I sent Defendants copies of all pleadings and papers filed in this action so far via emails addressed to Douglas Letter and Todd Tatelman (who represent Defendants Cummings and Kenny), and Jerry D. Bernstein, Inbal Garrity, Lawrence Wechsler, and Henry Schuelke (who represent Defendant Mazars). The emails explained that the Court has not yet set the time for presenting the TRO application. I will notify Defendants as soon as it does. I will also serve Defendants with all documents as required by the Federal Rules of Civil Procedure.

Dated: April 22, 2019

_s/ William S. Consovoy_

Stefan C. Passantino (D.C. Bar #480037)
MICHAEL BEST & FRIEDRICH LLP
1000 Maine Ave. SW, Ste. 400
Washington, D.C. 20024
(202) 747-9582
spassantino@michaelbest.com

_Counsel for The Trump Organization, Inc., Trump Organization LLC, The Trump Corporation, DJT Holdings LLC, Trump Old Post Office LLC, and The Donald J. Trump Revocable Trust_

William S. Consovoy (D.C. Bar #493423)
Cameron T. Norris
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Blvd., Ste. 700
Arlington, VA 22201
(703) 243-9423
will@consovoymccarthy.com
cam@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com

_Counsel for President Donald J. Trump_