## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DONALD J. TRUMP; THE TRUMP
ORGANIZATION, INC.; TRUMP
ORGANIZATION LLC; THE TRUMP
CORPORATION; DJT HOLDINGS LLC;
THE DONALD J. TRUMP REVOCABLE
TRUST; and TRUMP OLD POST OFFICE
LLC,

*Plaintiffs*,

v.

ELIJAH E. CUMMINGS, in his official
capacity as Chairman of the House Committee
on Oversight and Reform; PETER KENNY, in
his official capacity as Chief Investigative
Counsel of the House Committee on Oversight
and Reform; and MAZARS USA LLP,

*Defendants*.

Case No. 1:19-cv-01136-APM

## CONSENT MOTION OF THE COMMITTEE ON OVERSIGHT AND REFORM OF THE U.S. HOUSE OF REPRESENTATIVES TO INTERVENE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

The Committee on Oversight and Reform of the U.S. House of Representatives[1]

respectfully moves the Court for leave to intervene in this case pursuant to Rule 24 of the Federal

Rules of Civil Procedure and Local Civil Rule 7(j).  The Committee seeks intervention as of

---

[1] The Bipartisan Legal Advisory Group (BLAG) of the United States House of Representatives has authorized the Committee's intervention in this matter. The BLAG comprises the Honorable Nancy Pelosi, Speaker of the House, the Honorable Steny H. Hoyer, Majority Leader, the Honorable James Clyburn, Majority Whip, the Honorable Kevin McCarthy, Republican Leader, and the Honorable Steve Scalise, Republican Whip, and "speaks for, and articulates the institutional position of, the House in all litigation matters." Rules of the U.S. House of Representatives (116th Cong.), Rule II.8(b), available at https://tinyurl.com/HouseRules116thCong.  The Republican Leader and Republican Whip decline to join in this motion.

right pursuant to Rule 24(a)(2), or in the alternative, permissive intervention under Rule 24(b)(1)(B).  All parties consent to the relief sought by this motion to intervene.  The Committee and plaintiffs' counsel have further agreed that if the Court grants the motion to intervene, plaintiffs will voluntarily dismiss Defendants the Honorable Elijah E. Cummings and Mr. Peter Kenny.

If intervention is granted, the Committee will file an opposition to plaintiffs' motion for preliminary injunction and otherwise participate fully in this action on the schedule already set by the Court.  A proposed order is attached as Exhibit A.

## INTRODUCTION

Plaintiffs filed this suit to challenge a subpoena issued to defendant Mazars USA LLP by the Committee seeking documents relating to a Committee investigation.  In addition to Mazars, plaintiffs originally named as defendants Elijah E. Cummings, in his official capacity as Chairman of the Committee, and Peter Kenny, in his official capacity as Chief Investigative Counsel of the Committee.  Plaintiffs have agreed, however, to voluntarily dismiss Chairman Cummings and Mr. Kenny once this motion is granted.  On the facts presented here, the Committee is a proper party and it therefore seeks to intervene in the suit to defend its significant interest in the validity and enforcement of its subpoena to Mazars.

The Committee has a significant interest in ensuring compliance with its subpoenas.  Given that plaintiffs' complaint squarely challenges the validity of the Committee's subpoena to Mazars and seeks to prevent Mazars from producing any documents in response, only the Committee can adequately represent its own interests in this action.  And the Committee has acted expeditiously to intervene here:  The Committee notified the Court of its intent to intervene in this action—with the parties' consent—the day after plaintiffs filed their Complaint.

## BACKGROUND

The Committee has broad legislative, investigative, and oversight authority.  *See* Rules of the U.S. House of Representatives (116th Cong.), Rule X.  Pursuant to this authority, the Committee is conducting investigations and oversight of government ethics throughout the Executive Branch, potential conflicts of interest related to senior Executive Branch officials, potential constitutional violations, and President Trump's continued financial interest in the Trump International Hotel, in Washington, D.C. under a federal lease administered by the General Services Administration, any financial disclosures used to obtain that lease, and the General Services Administration's ongoing management of that lease.  As the principal investigative Committee for the House, the Committee's investigations inform not only its own legislative function, but also the legislative function of other House Committees.

The Committee's investigations have sought to elicit information that would inform the Committee, as well as the House, about the need for new laws or amendments to existing laws. For example, one omnibus ethics bill, H.R. 1, is "a historic reform package to restore the promise of our nation's democracy, end the culture of corruption in Washington, and reduce the role of money in politics to return the power back to the American people."[2]  If enacted, H.R. 1, would, among other reforms, amend financial disclosure obligations and impose requirements to limit Presidential financial conflicts of interest.  *See* H.R. 1, 116th Cong., tit. VIII (2019).  H.R. 1 passed the House on March 8, 2019, *see* 165 Cong. Rec. H2601-02 (daily ed. Mar. 8, 2019), and

---

[2] Press Release, Nancy Pelosi, Speaker of the U.S. House of Representatives, Pelosi Remarks at Press Event on Introduction of H.R. 1, For The People Act (Jan. 4, 2019), https://tinyurl.com/HR1Remarks.  The bill was referred to the Committee on Oversight and Reform (among others) on January 3, 2019, and discharged from the Committee on March 4. *See Committees: H.R. 1—116th Congress (2019-2020)*, Congress.gov, https://tinyurl.com/HR1Committees.

remains pending before the Congress.  H.R. 1 is one of multiple bills relating to Executive Branch conflicts of interests and senior official financial disclosures.[3]

In addition to the issuance of the subpoena to Mazars, the Committee has held numerous hearings and requested documents from multiple sources to further its ongoing investigations. At one such hearing,[4] the President's former attorney Michael Cohen testified that portions of financial statements he provided, which were allegedly prepared by Mazars, may have included false statements about President Trump's assets and liabilities.[5]  To further its investigations, the Committee followed up by letter to Mazars on March 20, 2019, seeking information on how certain financial statements and other financial disclosures were prepared.[6]  Mazars informed the Committee that it could not voluntarily provide the requested documents without a Congressional subpoena.[7]  After discussions between the Committee and Mazars, the Committee

---

[3] *See, e.g.*, H.R. 745, 116th Cong. (2019) (to strengthen Office of Government Ethics's investigative and enforcement authority); H.R. 391, 116th Cong. (2019) (to require public reporting of ethics waivers obtained by Executive Branch appointees).

[4] *Michael Cohen, Former Attorney to President Donald Trump: Hearing Before the H. Comm. on Oversight & Reform*, 116th Cong. (2019) (video, prepared testimony, and exhibits available at https://tinyurl.com/CohenOversightHearing).

[5] *See Testimony of Michael D. Cohen*, House Comm. on Oversight & Reform 11 (Feb. 27, 2019) (*Testimony of Michael D. Cohen*), https://tinyurl.com/Feb27CohenTestimony; *see also* Kenneth P. Vogel, *Cohen Testimony Raises Questions About Trump's Financial Disclosure*, N.Y. Times (Feb. 27, 2019), https://tinyurl.com/NYTCohenTestimony.

[6] Letter from the Honorable Elijah E. Cummings, Chairman, House Comm. on Oversight & Reform, to Victor Wahba, Chairman & Chief Executive Officer, Mazars USA LLP (Mar. 20, 2019), https://tinyurl.com/Mar20CummingsLetter.

[7] Letter from Victor Wahba, Chairman & Chief Executive Officer, Mazars USA LLP, to the Honorable Elijah E. Cummings, Chairman, House Comm. on Oversight & Reform (Mar. 27, 2019), https://tinyurl.com/Mar27MazarsLetter.

issued a subpoena to Mazars on April 15, 2019, seeking financial statements, supporting documents, and related communications.[8]

On April 22, 2019, five days before the subpoena return date, counsel for plaintiffs notified the Committee that they had filed the instant action challenging the subpoena to Mazars. After being contacted by the Court, counsel for all parties reached agreement on a briefing schedule, which the Court entered.  Under that schedule, briefing on plaintiffs' motion for preliminary injunction will conclude by May 8, 2019, with oral argument set for May 14, 2019. *See* Docket, Minute Order (Apr. 23, 2019).

## ARGUMENT

This Court should grant the Committee's motion to intervene as of right because the Committee has a significant interest in ensuring enforcement of its subpoena and, as all agree, it is the proper party to defend the validity of its subpoena against plaintiffs' allegations here.  In particular, the Committee has a significant interest in obtaining Mazars's response to the Committee's valid legislative subpoena, as well as an institutional interest in the legal questions presented in this suit.  The Committee also has an interest in preserving its rights to seek further review in the event of an adverse decision.  The Committee thus satisfies the standard for mandatory intervention under Rule 24(a):  It has a substantial interest in compliance and enforcement of its subpoenas; it would be severely prejudiced if it were not permitted to participate in this action to protect its interests, which are not adequately represented by any of the parties; and it promptly sought intervention.  On similar facts, courts have allowed House Committees to intervene to protect interests in ensuring compliance with subpoenas issued to

---

[8] Subpoena from House Comm. on Oversight & Reform to Mazars USA LLP (Apr. 15, 2019) (Pl. Ex. A to Application for TRO (Apr. 22, 2019) (ECF No. 9-1)).

third parties.  *See Bean LLC v. John Doe Bank*, 291 F. Supp. 3d 34, 39 (D.D.C. 2018) (noting

that the court had granted the House Committee's motion to intervene in a suit brought by bank's

client challenging subpoena issued to a bank for client's financial records).  As discussed below,

the Committee has Article III standing to intervene in this case.  Finally, in the alternative, this

Court should permit the Committee to intervene under Rule 24(b).

## I.      The Committee Satisfies the Mandatory Intervention Requirements

A party seeking to intervene as of right must satisfy four requirements under Rule

24(a)(2): (1) the application to intervene must be "timely"; (2) the party must have "an interest

relating to the property or transaction that is the subject of the action"; (3) the party must be "so

situated that the disposing of the action may as a practical matter impair or impede the movant's

ability to protect its interest"; and (4) the party's interest must not be "adequately represent[ed]"

by "existing parties" to the action.  Fed. R. Civ. P. 24(a), (a)2.  A prospective intervenor under

Rule 24(a)(2) must satisfy the same Article III standing requirements as original parties.  *Fund*

*for Animals, Inc. v. Norton*, 322 F.3d 728, 732-33 (D.C. Cir. 2003).  The Committee satisfies

those requirements here.

"The right of intervention conferred by Rule 24 implements the basic jurisprudential

assumption that the interest of justice is best served when all parties with a real stake in a

controversy are afforded an opportunity to be heard."  *Hodgson v. United Mine Workers of Am.*,

473 F.2d 118, 130 (D.C. Cir. 1972).  To that end, pursuant to Rule 24(a)(2), "[a] district court

must grant a timely motion to intervene that seeks to protect an interest that might be impaired

by the action and that is not adequately represented by the parties."  *Roane v. Leonhart*, 741 F.3d

147, 151 (D.C. Cir. 2014); Fed. R. Civ. P. 24(a)(2).

**1.** The Committee filed a motion to intervene in this action as expeditiously as possible. The Committee issued its subpoena on April 15, 2019. Plaintiffs then filed this action on April 22, 2019. The following day, on April 23, 2019, the Committee notified the Court of its intent to file this motion to intervene, which is being filed four days after the complaint was filed and before any party has filed responsive pleadings.

**2.** The Committee has a substantial, legally protected interest in ensuring a proper response to the subpoena it issued to Mazars in furtherance of the Committee's legislative and oversight authorities. *See generally Comm. on Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53 (D.D.C. 2008). The Committee issued the subpoena as part of an ongoing investigation consistent with its constitutionally derived power to conduct oversight and investigations. The response to the subpoena from Mazars will be directed to the Committee to aid in the carrying out of its legislative duties. The Committee thus has a substantial interest in defending the validity of its subpoena against plaintiffs' challenge in this suit. For similar reasons, Committees of the House have participated in cases challenging their subpoenas. *See, e.g.*, *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285 (D.C. Cir. 1980); *Bean LLC*, 291 F. Supp. 3d at 39.

**3.** Relatedly, this action threatens to impair the Committee's legally protected interest because plaintiffs seek to prevent Mazars from producing *any* records in response to the Committee's subpoena. Indeed, as the primary investigative Committee in the House, the Committee's ability to investigate and legislate on matters within its jurisdiction would be impaired if Mazars were prohibited from (or declined to) provide relevant information when served with a Committee subpoena.

**4.**  Mazars—which is a private firm—does not adequately represent the Committee's interests in ensuring compliance with its subpoenas.  Mazars has no legal interest in ensuring that the Committee's legislative prerogatives are respected.  *See generally Am. Tel. & Tel. Co.*, 642 F.2d at 1293 (intervention "ordinarily should be allowed . . . unless it is clear that" an existing party "provide[s] adequate representation" (quotation marks omitted)).  On similar reasoning, the D.C. Circuit recognized that the House was "the real defendant in interest," where the Executive Branch sued AT&T to enjoin it from complying with a Congressional subpoena.  *United States v. Am. Tel. & Tel. Co.*, 551 F.2d 384, 385 (D.C. Cir. 1976).  The D.C. Circuit recognized that "[a]lthough this suit was brought in the name of the United States against AT&T, AT&T has no interest in this case, except to determine its legal duty."  *Id.* at 388-89; *see also id.* at 385 (explaining AT&T "has no stake in the controversy beyond knowing whether its legal obligation is to comply with the subpoena or not").  Likewise, here, Mazars has no interest in this case other than determining its obligation to comply with the Congressional subpoena.  The Committee is thus the real party in interest.

## II.    The Committee Has Standing

The Committee has Article III standing.  To establish standing, any "prospective intervenor . . . must show: (1) injury-in-fact, (2) causation, and (3) redressability."  *Fund for Animals*, 322 F.3d at 732-33 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Courts have routinely held that the House and its Committees have standing to enforce Congressional subpoenas.  *See, e.g.*, *Miers*, 558 F. Supp. 2d at 69 ("[T]he House has standing to invoke the federal judicial power to aid in its investigative function."); *Walker v. Cheney*, 230 F. Supp. 2d 51, 68 (D.D.C. 2002) (noting "authority in this Circuit indicating that a House of Congress or a committee of Congress would have standing to sue to retrieve information to

which it is entitled"); *U.S. House of Representatives v. U.S. Dep't of Commerce*, 11 F. Supp. 2d

76, 86 (D.D.C. 1998) ("[I]t [is] well established that a legislative body suffers a redressable

injury when that body cannot receive information necessary to carry out its constitutional

responsibilities").  For the same reasons, the Committee has standing here.  Indeed, plaintiffs do

not contest that the Committee is a proper party to intervene and that it has standing to litigate

these claims.

### A.  The Committee Has an Injury in Fact

To demonstrate injury in fact, an intervenor defendant, like other parties, must show "an

invasion of legally protected interest which is (a) concrete and particularized, and (b) actual or

imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (citations and quotation

marks omitted).  Here, the Committee has a long-established, legally protected interest in

compliance with its subpoenas.  Plaintiffs' attempt to obtain an injunction preventing Mazars

from complying with the subpoena inflicts an "informational injury" on the Committee that is

"sufficiently concrete so as to satisfy the irreducible constitutional minimum of Article III."  *U.S.*

*Dep't of Commerce*, 11 F. Supp. 2d at 85 (quotation marks omitted).  If plaintiffs are successful

in their suit, Mazars will be enjoined from producing the specific documents that the Committee

sought in its subpoena.  That will directly impair the Committee's investigation and its pursuit of

its legislative prerogatives.  The threatened invasion of the Committee's legally protected interest

in ensuring compliance with its subpoenas is actual and imminent because an adverse ruling by

this Court would preclude Mazars from complying with the Committee's subpoena.

### B.  The Committee's Injury Is Fairly Traceable to the Parties' Actions and Redressable by This Court

The Committee also satisfies the traceability and redressability prongs of standing.  *See*

*Lujan*, 504 U.S. at 560 (standing requires "a causal connection between the injury and the

conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant'" (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)); *Wilderness Soc'y v. Norton*, 434 F.3d 584, 590 (D.C. Cir. 2006) ("The redressability inquiry poses a simple question: '[I]f [intervenors] secured the relief they sought, . . . would [it] redress their injury?").  Here, the Committee's injury is fairly traceable to the conduct of the parties in this action.  The Committee issued a subpoena to Mazars for specifically identified records, and through this litigation plaintiffs seek to "challenge the validity and enforceability of [the] subpoena," thereby preventing the production of all responsive records.  *See* Compl. ¶ 45 (ECF No. 1).

This Court may grant the relief that the Committee seeks: namely, an order confirming that the subpoena is valid and enforceable.  *See Senate Permanent Subcomm. v. Ferrer*, 199 F. Supp. 3d 125, 143 (D.D.C. 2016) ("The Court finds that to the extent the Subpoena implicates Mr. Ferrer's protected freedoms, it is only in an incidental and minimal fashion.  In comparison, the subpoenaed information is highly relevant to the Subcommittee's investigation and potential legislation on Internet sex trafficking."), *vacated as moot by* 856 F.3d 1080 (D.C. Cir. 2017).  If the Court upholds the validity of the subpoena, the Committee fully expects Mazars to comply.  An order from the Court would therefore redress the Committee's injury.

## III.    The Committee Should Be Allowed to Intervene Permissively

If the Court finds that the Committee does not satisfy the standard for intervention as of right, it should permit the Committee to intervene under Rule 24(b).  Under Rule 24(b)(1)(B), "[o]n timely motion, the court may permit, anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  The standard for permissive intervention is easily satisfied here.

The Committee expeditiously moved to intervene and has a claim or defense that shares a common question of law with the main action.  In fact, the common question of law here is the central legal question presented in this case: the validity and enforceability of the Committee's subpoena to Mazars, which the Committee will address in its forthcoming opposition to plaintiffs' motion for preliminary injunction.  This common legal question—which strikes at the core of the Committee's investigative and legislative authority—justifies the Committee's permissive intervention.

Finally, intervention will not "delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).  As noted above, the Committee's motion is timely and no delays will result from the Committee's intervention in this matter.  The Committee's participation as intervenor-defendant will promote "the just, speedy, and inexpensive determination" of this action.  Fed. R. Civ. P. 1.  For these reasons, if the Court does not grant the Committee's request for mandatory intervention, permissive intervention is appropriate.

## CONCLUSION

For all the foregoing reasons, the Court should grant the Committee's consent motion to intervene.

Respectfully submitted,

*/s/ Douglas N. Letter*
DOUGLAS N. LETTER (D.C. Bar No. 253492)
  *General Counsel*
TODD B. TATELMAN (VA Bar No. 66008)
  *Deputy General Counsel*
MEGAN BARBERO (MA Bar No. 668854)
  *Associate General Counsel*
BROOKS M. HANNER (D.C. Bar No. 1005346)
  *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES[*]

219 Cannon House Office Building
Washington, D.C.  20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)
Douglas.Letter@mail.house.gov

*Counsel for the Committee on Oversight and
Reform of the U.S. House of Representatives*

April 26, 2019

---

[*] Attorneys for the Office of General Counsel for the U.S. House of Representatives are "entitled, for the purpose of performing the counsel's functions, to enter an appearance in any proceeding before any court of the United States or of any State or political subdivision thereof without compliance with any requirements for admission to practice before such court."  2 U.S.C. § 5571.

## CERTIFICATE OF SERVICE

I certify that on April 26, 2019, I caused the foregoing document to be filed via this

Court's CM/ECF system, which I understand caused service on all registered parties.  I further

certify that I served a copy of the foregoing document by email on counsel for defendant Mazars

USA LLP:

Inbal P. Garrity
BlankRome
The Chrysler Building
405 Lexington Avenue
New York, NY  10175
igarrity@blankrome.com


/s/ *Douglas N. Letter*
Douglas N. Letter