# Exhibit A

ELIJAH E. CUMMINGS, MARYLAND
CHAIRMAN

ONE HUNDRED SIXTEENTH CONGRESS

JIM JORDAN, OHIO
RANKING MINORITY MEMBER

# Congress of the United States

## House of Representatives

COMMITTEE ON OVERSIGHT AND REFORM

2157 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6143

MAJORITY   (202) 225–5051
MINORITY   (202) 225–5074
http://oversight.house.gov

January 22, 2019

The Honorable Emory A. Rounds III
Director
Office of Government Ethics
1201 New York Avenue NW
Suite 500
Washington, D.C.  20005

Dear Director Rounds:

I am writing to request documents related to President Donald Trump's reporting of debts and payments to his personal attorney, Michael Cohen, to silence women alleging extramarital affairs with the President before the election.

As you know, the Ethics in Government Act requires all federal officials, including the President, to publicly disclose financial liabilities that could impact their decision-making.  On May 16, 2018, after reviewing President Trump's May 2018 personal financial disclosure forms, the Acting Director of the Office of Government Ethics (OGE) at the time, David J. Apol, wrote to Deputy Attorney General Rod Rosenstein, stating:

> OGE has concluded that, based on the information provided as a note to part 8, the payment made by Mr. Cohen is required to be reported as a liability.  OGE has determined that the information provided in that note meets the disclosure requirements for a reportable liability under the Ethics in Government Act.[1]

To assist our investigation of this matter, please provide the following documents by February 1, 2019:

1.   All communications with any White House employee or any nongovernment representative for the filer related to the determination made by OGE regarding Note 3 to Part 8 of President Trump's May 2018 OGE Form 278e, as referenced in the May 16, 2018, letter to the Department of Justice; and

---

[1] Letter from David J. Apol, Acting Director, Office of Government Ethics, to Rod J. Rosenstein, Deputy Attorney General, Department of Justice (May 16, 2018) (online at https://oge.app.box.com/v/OGELettertoDOJ).

The Honorable Emory A. Rounds III
Page 2

    2.     All OGE materials related to the reporting of liabilities or payments made to or by Michael Cohen on President Trump's June 2017 OGE Form 278e and May 2018 OGE Form 278e.

       The Committee on Oversight and Reform is the principal oversight committee of the House of Representatives and has broad authority to investigate "any matter" at "any time" under House Rule X.  In addition, House Rule X, clause 3(i) specifically charges the Committee with conducting oversight of "the operation of Government activities at all levels, including the Executive Office of the President."

       An attachment to this letter provides additional instructions for responding to the Committee's request.  If you have any questions regarding this request, please contact my staff at (202) 225-5051.

       Thank you for your prompt attention to this request.

                Sincerely,

                Elijah E. Cummings
                Chairman

Enclosure

cc:    The Honorable Jim Jordan, Ranking Member

**Responding to Oversight Committee Document Requests**

1.    In complying with this request, produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf.  Produce all documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party.

2.    Requested documents, and all documents reasonably related to the requested documents, should not be destroyed, altered, removed, transferred, or otherwise made inaccessible to the Committee.

3.    In the event that any entity, organization, or individual denoted in this request is or has been known by any name other than that herein denoted, the request shall be read also to include that alternative identification.

4.    The Committee's preference is to receive documents in electronic form (i.e., CD, memory stick, thumb drive, or secure file transfer) in lieu of paper productions.

5.    Documents produced in electronic format should be organized, identified, and indexed electronically.

6.    Electronic document productions should be prepared according to the following standards:

    a.    The production should consist of single page Tagged Image File ("TIF"), files accompanied by a Concordance-format load file, an Opticon reference file, and a file defining the fields and character lengths of the load file.

    b.    Document numbers in the load file should match document Bates numbers and TIF file names.

    c.    If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

    d.    All electronic documents produced to the Committee should include the following fields of metadata specific to each document, and no modifications should be made to the original metadata:

    BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME, SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE, ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD,

INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

7. Documents produced to the Committee should include an index describing the contents of the production. To the extent more than one CD, hard drive, memory stick, thumb drive, zip file, box, or folder is produced, each should contain an index describing its contents.

8. Documents produced in response to this request shall be produced together with copies of file labels, dividers, or identifying markers with which they were associated when the request was served.

9. When you produce documents, you should identify the paragraph(s) or request(s) in the Committee's letter to which the documents respond.

10. The fact that any other person or entity also possesses non-identical or identical copies of the same documents shall not be a basis to withhold any information.

11. The pendency of or potential for litigation shall not be a basis to withhold any information.

12. In accordance with 5 U.S.C.§ 552(d), the Freedom of Information Act (FOIA) and any statutory exemptions to FOIA shall not be a basis for withholding any information.

13. Pursuant to 5 U.S.C. § 552a(b)(9), the Privacy Act shall not be a basis for withholding information.

14. If compliance with the request cannot be made in full by the specified return date, compliance shall be made to the extent possible by that date. An explanation of why full compliance is not possible shall be provided along with any partial production.

15. In the event that a document is withheld on the basis of privilege, provide a privilege log containing the following information concerning any such document: (a) every privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author, addressee, and any other recipient(s); (e) the relationship of the author and addressee to each other; and (f) the basis for the privilege(s) asserted.

16. If any document responsive to this request was, but no longer is, in your possession, custody, or control, identify the document (by date, author, subject, and recipients), and explain the circumstances under which the document ceased to be in your possession, custody, or control.

17. If a date or other descriptive detail set forth in this request referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the request, produce all documents that would be responsive as if the date or other descriptive detail were correct.

2

18.     This request is continuing in nature and applies to any newly-discovered information. Any record, document, compilation of data, or information not produced because it has not been located or discovered by the return date shall be produced immediately upon subsequent location or discovery.

19.     All documents shall be Bates-stamped sequentially and produced sequentially.

20.     Two sets of each production shall be delivered, one set to the Majority Staff and one set to the Minority Staff.  When documents are produced to the Committee, production sets shall be delivered to the Majority Staff in Room 2157 of the Rayburn House Office Building and the Minority Staff at a room of their designation.

21.     Upon completion of the production, submit a written certification, signed by you or your counsel, stating that:  (1) a diligent search has been completed of all documents in your possession, custody, or control that reasonably could contain responsive documents; and (2) all documents located during the search that are responsive have been produced to the Committee.

## Definitions

1.      The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following:  memoranda, reports, expense reports, books, manuals, instructions, financial reports, data, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, communications, electronic mail (email), contracts, cables, notations of any type of conversation, telephone call, meeting or other inter-office or intra-office communication, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape, or otherwise.  A document bearing any notation not a part of the original text is to be considered a separate document.  A draft or non-identical copy is a separate document within the meaning of this term.

2.      The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or

3

otherwise, and whether in a meeting, by telephone, facsimile, mail, releases,  electronic message including email (desktop or mobile device), text message, instant message, MMS or SMS message, message application, or otherwise.

3.     The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information that might otherwise be construed to be outside its scope.   The singular includes plural number, and vice versa.  The masculine includes the feminine and neuter genders.

4.     The term "including" shall be construed broadly to mean "including, but not limited to."

5.     The term "Company" means the named legal entity as well as any units, firms, partnerships, associations, corporations, limited liability companies, trusts, subsidiaries, affiliates, divisions, departments,  branches, joint ventures, proprietorships, syndicates, or other legal, business or government entities over which the named legal entity exercises control or in which the named entity has any ownership whatsoever.

6.     The term "identify," when used in a question about individuals, means to provide the following information:  (a) the individual's complete name and title; (b) the individual's business or personal address and phone number; and (c) any and all known aliases.

7.     The term "related to" or "referring or relating to," with respect to any given subject, means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is pertinent to that subject in any manner whatsoever.

8.     The term "employee" means any past or present agent, borrowed employee, casual employee, consultant, contractor, de facto employee, detailee, fellow, independent contractor, intern, joint adventurer, loaned employee, officer, part-time employee, permanent employee, provisional employee, special government employee, subcontractor, or any other type of service provider.

9.     The term "individual" means all natural persons and all persons or entities acting on their behalf.